THOMAS F. DOWD AND BARBARA A. DOWD, APPELLANTS, V. FIRST OMAHA SECURITIES CORPORATION, DOING BUSINESS AS FIRST NATIONAL BROKERAGE SERVICES, A CORPORATION, APPELLEE.

495 N.W.2d 36

Filed February 5, 1993.    No. S-90-093.

Michael Boyle and, on brief, Brian J. Muench and Eugene L. Pieper, of Thompson, Crounse, Pieper & Brumbaugh, P.C., for appellants.

Frederick S. Cassman and Sandra L. Maass, of Abrahams, Kaslow & Cassman, for appellee.

HASTINGS, C.J., BOSLAUGH, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Thomas F. Dowd and Barbara A. Dowd claim, inter alia, that the district court for Douglas County erred (1) in requiring them to submit to arbitration a dispute with their·stockbroker, First Omaha Securities (FOS), concerning the liquidation of the Dowds' margin accounts and (2) in confirming the arbitration panel's award in favor of FOS.

## FACTS

Alleging wrongful liquidation of their margin accounts, the Dowds sued FOS for breach of their "customer agreement" with FOS, negligence, and breach of a fiduciary duty. The agreement, signed by the Dowds and FOS on May 25, 1982, provided that (1) FOS would act as the Dowds' securities broker, (2) Nebraska law would govern the contract, and (3) any disputes arising from the agreement would be submitted to arbitration. On October 5, 1988, the district court granted FOS' motion to stay further proceedings pending arbitration. The court ruled that U.S. Supreme Court precedent required that the stay be granted.

At the arbitration hearing, Charles Burmeister, an officer of Ameritas Investment Corporation, testified as an expert for the Dowds. Donald Wagner, one of the three arbitration panel members, was a former Ameritas employee who had been fired by that company. Wagner had an age discrimination complaint pending against Ameritas at the time of the hearing. Burmeister told Dowds' attorney about Wagner's termination at Ameritas. However, neither the Dowds nor their attorney knew about Wagner's age discrimination complaint until after the hearing. Wagner did not disclose any relationship with Burmeister or the pending age discrimination complaint on his arbitrator "Appointment and Oath" form. Rule 19 of the American Arbitration Association's Securities Arbitration Rules (rev. 1989) requires panel members to disclose "any circumstance

likely to affect impartiality, including any bias . . . or any past or present relationship with the parties or their representatives."

After the arbitration panel unanimously found in favor of FOS, the Dowds asked the district court to vacate the arbitration award and to dissolve the stay. The Dowds argued that Wagner's failure to disclose his age discrimination complaint against Ameritas constituted "evident partiality" sufficient to warrant vacating the award. As will be shown later, the district judge properly upheld the stay of the state court proceedings and ordered arbitration. The dispute between the Dowds and their stockbroker is governed by federal law, not by Nebraska's Constitution, statutes, or case law. The district court also found that Wagner had no duty to disclose his age discrimination complaint. The judge stated that if Wagner had "any interest whatsoever, *which the Court does not so find*, such interest or bias was de minimis." (Emphasis supplied.) The court denied Dowds' motions and granted FOS' motion to confirm the arbitration award. The Dowds then perfected this appeal.

## ASSIGNMENTS OF ERROR

Restated, the Dowds' assignments of error claim that the trial court erred in (1) granting FOS' motion to stay pending arbitration, (2) not applying Nebraska law as set forth in the "customer agreement," (3) enforcing a contractual provision compelling arbitration of future-arising disputes rendered absolutely void by article I, § 13, of the Nebraska Constitution, (4) applying federal law to common-law causes of action brought in a state court, and (5) failing to vacate the arbitration award on grounds of Wagner's failure to disclose a current adversarial relationship with the Dowds' expert witness' employer. We will discuss these assignments of error in order.

## DISCUSSION

The Dowds' assignments of error fall into two categories: those dealing with the propriety of requiring the parties to arbitrate, and those questioning the propriety of the arbitration award itself.

Whether a stay should be granted and arbitration required when customers have a dispute with their stockbroker are

questions of law. When reviewing a question of law, an appellate court is obliged to reach a conclusion independent of the trial court's ruling. *Nebraska Builders Prod. Co. v. Industrial Erectors*, 239 Neb. 744, 478 N.W.2d 257 (1992).

In this case, the district court had no alternative but to grant a stay pending arbitration. The FOS-Dowd contract is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 through 15 (1988) (FAA). The Supremacy Clause of the U.S. Constitution dictates that state law, including constitutional law, is superseded to the extent it conflicts with federal law. U.S. Const. art. VI, cl. 2; *MAPCO Ammonia Pipeline v. State Bd. of Equal.*, 238 Neb. 565, 471 N.W.2d 734 (1991). Therefore, this court's holdings that a predispute agreement to compel arbitration is void are preempted to the extent they conflicted with the FAA.

The FAA provides, in pertinent part:

> **§ 2. Validity, irrevocability, and enforcement of agreements to arbitrate**
>
> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
>
> . . . .
>
> **§ 3. Stay of proceedings where issue therein referable to arbitration**
>
> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

(Title enacted in 1947.)

The U.S. Supreme Court has held that the FAA requires state courts, as well as federal courts, to grant stays pending arbitration. *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). The

U.S. Supreme Court has also stated:

> We discern only two limitations on the enforceability of arbitration provisions governed by the Federal Arbitration Act: they must be part of a written maritime contract or a contract "evidencing a transaction involving commerce" and such clauses may be revoked upon "grounds as exist at law or in equity for the revocation of any contract." We see nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under state law.

*Southland Corp. v. Keating*, 465 U.S. 1, 10-11, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984).

Although a more detailed discussion of the applicability of the FAA to the Dowd-FOS agreement will be undertaken later, for present purposes it is clear that the district court correctly stayed the Dowd-FOS litigation pursuant to FAA § 3. The parties' "agreement" was a written contract empowering FOS to buy and sell securities for the Dowds. As such, as required by §§ 1 and 2 of the FAA, it directly involved interstate commerce. Aside from particular provisions of Nebraska law regarding arbitration, there is no allegation in the Dowds' petition or motion to dissolve the stay that the contract was unenforceable in law or equity. Therefore, the FAA applies.

In support of their argument that the trial judge erred in applying the FAA to stay their district court action, the Dowds mistakenly rely upon *Wilko v. Swan*, 346 U.S. 427, 74 S. Ct. 182, 98 L. Ed. 168 (1953). *Wilko v. Swan* was overruled by the U.S. Supreme Court in *Rodriguez de Quijas v. Shearson/Am. Exp.*, 490 U.S. 477, 109 S. Ct. 1917, 104 L. Ed. 2d 526 (1989). When it granted the stay, the district court ruled that *Wilko* was inapplicable and that this case was governed by two more recent Supreme Court decisions, *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987), and *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985).

In overruling the Dowds' postarbitration motion to dissolve the stay, the district court held that *Rodriguez de Quijas* controlled and thus upheld the stay. On appeal, FOS also argues that *Rodriguez de Quijas* required that the action be stayed.

The holdings in *Wilko* and *Rodriguez de Quijas* are inapplicable.

*Wilko* involved a suit by a customer against his brokers under § 12(2) of the Securities Act of 1933 (1933 Act). The brokerage contract contained a clause requiring arbitration of all disputes between the parties. The customer filed suit in the U.S. District Court for the Southern District of New York. The brokers moved to stay the trial pursuant to § 3 of the FAA. The U.S. Supreme Court, relying on a specific provision of the 1933 Act, held that regardless of the FAA, the customer could not be compelled to arbitrate the § 12(2) claim.

The Dowds argue that because *Wilko* had not been overruled when FOS moved to stay the action, granting the stay was error. We disagree.

In their brief, the Dowds state: "In Wilko, the U.S. Supreme Court held that a securities customer's waiver of the right to select the judicial forum was unenforceable." Brief for appellants at 9. The Dowds' characterization of the *Wilko* holding is too broad. *Wilko* applies only to actions brought under the 1933 Act, specifically, those brought under § 12(2). The *Wilko* Court stated, "[W]e decide that the intention of Congress concerning the sale of securities is better carried out by holding invalid such an agreement for arbitration *of issues arising under the [1933] Act.*" (Emphasis supplied.) *Wilko*, 346 U.S. at 438. See, also, *Shearson/American Express Inc. v. McMahon*, 482 U.S. at 228 (holding *Wilko* inapplicable to the Securities Exchange Act of 1934 and stating, "In *Wilko*, the Court held that a predispute agreement could not be enforced to compel arbitration of a claim *arising under § 12(2) of the Securities Act*, 15 U. S. C. § 77*l*(2)" (emphasis supplied)).

The Dowds' petition makes no mention of the Securities Act of 1933, in terms of either causes of action or remedies. As the Dowds point out in their brief, their petition alleges causes of action in "Breach of Contract; Negligence; and Breach of Fiduciary Duty on the part of the Defendant." Brief for appellants at 1. *Wilko* did not deal with these "state" causes of action. Because the *Wilko* exception to the FAA is inapplicable, the provisions of the FAA applied when FOS moved to stay the litigation. The district court correctly held *Wilko* inapplicable

at that time and granted the stay.

The district court did, however, rely upon *Rodriguez de Quijas, supra*, in denying the Dowds' postarbitration motion to dissolve the stay. At issue in *Rodriguez de Quijas*, as in *Wilko*, was the arbitrability of a § 12(2) claim under the 1933 Act. Reconsidering its earlier decision, the U.S. Supreme Court overruled *Wilko* and held that such actions were arbitrable.

In spite of this change in the law, *Rodriguez de Quijas* is no more dispositive of the case at bar than is *Wilko*. There is, however, U.S. Supreme Court precedent to support the denial of Dowds' postarbitration motion to dissolve the court's stay. Pre-*Rodriguez de Quijas* cases hold that state claims falling under the FAA are arbitrable. See, e.g., *Dean Witter Reynolds Inc. v. Byrd, supra*; *Prima Paint v. Flood & Conklin*, 388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967). Although the district court's reliance upon *Rodriguez de Quijas* was misplaced, the court properly stayed the litigation and properly denied the motion to dissolve the stay.

The Dowds' second and third assignments of error contest the propriety of the district court's order to arbitrate. The Dowds argue that the FAA applies only to contracts involving a valid arbitration clause and that the clause in their agreement was absolutely void. The Dowds contend that, by its own terms, their agreement with FOS should be governed by Nebraska law and that under Nebraska law clauses compelling arbitration of future-arising disputes are void. The Dowds correctly note that this court has consistently held that predispute arbitration agreements oust Nebraska courts of jurisdiction and are therefore unenforceable on public policy grounds. *State v. Nebraska Assn. of Pub. Employees*, 239 Neb. 653, 477 N.W.2d 577 (1991) (citing *Babb v. United Food & Commercial Workers Local 271*, 233 Neb. 826, 448 N.W.2d 168 (1989)). This policy is based on Neb. Const. art. I, § 13. This rule cannot be enforced, however, if it conflicts with the laws of the United States. See U.S. Const. art. VI, cl. 2.

As previously stated, from the terms of the FOS-Dowd agreement, the FAA applies and requires arbitration. As such, it conflicts with the law of Nebraska. When such a conflict occurs, federal law prevails under the Supremacy Clause.

*MAPCO Ammonia Pipeline v. State Bd. of Equal.*, 238 Neb. 565, 471 N.W.2d 734 (1991).

In *Wilson & Co., Inc. v. Fremont Cake & Meal Co.*, 153 Neb. 160, 43 N.W.2d 657 (1950), *cert. denied* 342 U.S. 812, 72 S. Ct. 25, 96 L. Ed. 614 (1951), one of the syllabus points indicates that in the event of such a conflict, Nebraska law would prevail over the FAA on questions of arbitrability, because arbitration is a procedural issue. The point did not explicitly arise in the opinion itself. Since that decision, the U.S. Supreme Court has specifically held that the FAA creates "a body of federal substantive law of arbitrability, applicable to *any* arbitration agreement within the coverage of the Act." (Emphasis supplied.) *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). The syllabus point in *Wilson & Co., Inc.* must therefore be disregarded.

The U.S. Supreme Court has directly addressed situations similar to the case at bar and has held that state law, even when incorporated by a choice-of-law provision, cannot prevent the enforcement of an arbitration clause otherwise valid under the FAA. As previously stated, the U.S. Supreme Court held in *Southland Corp. v. Keating*, 465 U.S. 1, 10-11, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984):

> We discern only two limitations on the enforceability of arbitration provisions governed by the Federal Arbitration Act: they must be part of a written maritime contract or a contract "evidencing a transaction involving commerce" and such clauses may be revoked upon "grounds as exist at law or in equity for the revocation of any contract." *We see nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under state law.*

(Emphasis supplied.)

In *Volt Info. Sciences v. Leland Stanford Jr. U.*, 489 U.S. 468, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989), the U.S. Supreme Court held enforceable a California statute that regulated the conduct of an agreed-upon arbitration. In upholding the statute, made applicable by a choice-of-law provision, the Court noted that only state law that *conflicts*

with the FAA is preempted. The Court continued, however:

> [The FAA] simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms. [Citation omitted.]
>
> In recognition of Congress' principal purpose of ensuring that private arbitration agreements are enforced according to their terms, we have held that the FAA pre-empts state laws which "require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."

*Id.*, 489 U.S. at 478 (quoting *Southland Corp., supra*).

The Dowds argue that Nebraska law voids the FOS-Dowd arbitration clause and therefore the FAA cannot apply. The *Volt* opinion refutes this argument. At the time the FOS-Dowd contract was signed, the FAA was in effect. Holdings by Nebraska's Supreme Court that a predispute arbitration agreement is unenforceable and void are preempted when the agreement implicates an FAA provision requiring arbitration. The FAA applied to the FOS-Dowd contract and required arbitration of the dispute.

The Dowds' fourth assignment of error claims that the district court erred by applying federal law to common-law causes of action brought in state court. They argue that this court should adopt the reasoning of the dissenting Justices in *Southland Corp., supra*, and hold that, based on policy reasons, the FAA does not preempt Nebraska law. Even if we were persuaded by the dissenting Justices' reasoning, we could not ignore a ruling of the U.S. Supreme Court on a question of federal law. That court is the final arbiter of such questions. The fourth assignment of error is without merit.

The Dowds' final assignment of error claims that the district court erred by refusing to vacate the arbitration award on grounds of "evident partiality" on the part of one arbitrator on the arbitration panel. This claim is based upon the failure of Wagner, a member of the arbitration panel, to disclose his pending lawsuit against the employer of one of the Dowds' expert witnesses. In denying the Dowds' motion to vacate the arbitration award, the district court ruled that Wagner had no duty to disclose the lawsuit and that Wagner's interest, if any,

was de minimis.

The district court's ruling on Wagner's duty to disclose is a question of law, and we are therefore obliged to reach a conclusion independent of the trial court's ruling. See *Nebraska Builders Prod. Co. v. Industrial Erectors*, 239 Neb. 744, 478 N.W.2d 257 (1992). A trial court's factual findings will not be set aside on appeal unless clearly wrong. See *City of LaVista v. Andersen*, 240 Neb. 3, 480 N.W.2d 185 (1992) (referring to factual findings made in the bench trial of a law action).

In 1988, § 10 of the FAA, which we have determined to be controlling, provided in part:

> In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> . . . .
>
> (b) Where there was evident partiality or corruption in the arbitrators, or either of them.

The Dowds claim that Wagner's failure to disclose showed "evident partiality" and therefore warranted vacation of the arbitration award. They point out that rule 19 of the American Arbitration Association's Securities Arbitration Rules requires neutral arbitrators to disclose "any circumstance likely to affect impartiality, including any bias . . . or any past or present relationship with the parties or their representatives." They note that Wagner disclosed nothing on his "Appointment and Oath" form. The Dowds conclude that a reasonable person could draw an inference of partiality from these facts sufficient to vacate the award.

The U.S. Supreme Court dealt with a § 10(b) challenge to an arbitration award in *Commonwealth Corp. v. Casualty Co.*, 393 U.S. 145, 89 S. Ct. 337, 21 L. Ed. 2d 301 (1968). In *Commonwealth Corp.*, the "neutral" third arbitrator failed to disclose that the defendant was a significant business customer of the arbitrator. After discovering the relationship, the plaintiff challenged the arbitration panel's award. In vacating the award, a plurality of the Court stated:

> We have no doubt that if a litigant could show that a foreman of a jury or a judge in a court of justice had,

unknown to the litigant, any such relationship, the judgment would be subject to challenge. . . . [W]e should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges . . . . We can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias.

*Id.*, 393 U.S. at 148-49.

Despite this holding, the U.S. Courts of Appeals have not adopted the so-called *Commonwealth Corp.* "appearance of bias" test. Since it was a plurality opinion, the courts of appeals have followed the reasoning delineated in Justice White's concurrence to *Commonwealth Corp.* See, e.g., *Toyota of Berkeley v. Local 1095*, 834 F.2d 751 (9th Cir. 1987), *cert. denied* 486 U.S. 1043, 108 S. Ct. 2036, 100 L. Ed. 2d 620 (1988); *Morelite Const. v. N.Y.C. Dist. Council Carpenters*, 748 F.2d 79 (2d Cir. 1984); *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673 (7th Cir. 1983), *cert. denied* 464 U.S. 1009, 104 S. Ct. 529, 78 L. Ed. 2d 711.

Justice White's concurrence indicated that arbitrators would not be held to the same standard of disclosure as judges. He further stated that "arbitrators are not automatically disqualified by a business relationship with the parties before them if both parties are informed of the relationship in advance, or if they are unaware of the facts but the relationship is trivial." *Commonwealth Corp.*, 393 U.S. at 150 (White and Marshall, JJ., concurring).

The principal tenet of the courts of appeals' test is that mere appearance of bias, without more, will not be sufficient to vacate the award. Rather, the challenging party must prove specific facts indicating evident partiality. See *Toyota of Berkeley, supra* (listing various courts of appeals' standards for evident partiality).

Some of the facts indicating partiality include pecuniary interest, familial relationship, and existence of an adversarial relationship. See, *Commonwealth Corp., supra* (intimating that any pecuniary interest casts doubt on the arbitrator's impartiality); *Morelite Const., supra* (vacating an award

because one of the arbitrators was the son of a vice president of the defendant local union's international union); *Middlesex Mut. Ins. Co. v. Levine*, 675 F.2d 1197 (11th Cir. 1982) (affirming the vacation of an award because arbitrator failed to disclose a legal dispute between his family's company and one of the parties to the arbitration). The inference of bias seems to be heightened when, in addition to the aforementioned factors, the party does not disclose the suspect relationship. See, *Commonwealth Corp., supra*; *Middlesex Mut. Ins. Co., supra*. Finally, almost every finding of evident partiality occurs when the arbitrator's relationship is with one of the parties, not with a witness. Cf., *Peabody v. Rotan Mosle, Inc.*, 677 F. Supp. 1135, 1138 (M.D. Fla. 1987) (holding that arbitrator's failure to disclose that his law partner's brother was the expert witness' attorney did not show evident partiality because the relationship was "trivial"); *Sofia Shipping Co., Ltd. v. Amoco Transport Co.*, 628 F. Supp. 116 (S.D.N.Y. 1986) (holding that arbitrator's failure to disclose his relationship with an employee and witness for the plaintiff, without specific proof of bias, did not show evident partiality).

One problem with a strict application of the "factual proof of bias" approach is that absent an outright admission by the biased party, evident partiality may be impossible to show. The U.S. Court of Appeals for the Second Circuit, recognizing the difficulty of proving actual bias, chose a middle ground between the *Commonwealth Corp.* "appearance of bias" standard and the stricter "proof of bias" standard. *Morelite Const., supra*. The court stated: "[W]e hold that 'evident partiality' within the meaning of 9 U.S.C. § 10 will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Morelite Const.*, 748 F.2d at 84.

We believe that the *Morelite Const.* test strikes a proper balance between the "judicial ethics" standard of the *Commonwealth Corp.* plurality and the unrealistic burden of the "proof of bias" standard. We therefore adopt the standard enunciated in *Morelite Const.* and apply it to Wagner's actions.

The burden of proving facts that establish a reasonable impression of partiality on the part of an arbitration panel

member rests upon the party challenging the panel award. See *Sheet Metal Wkrs. Intern. Ass'n v. Kinney Air Cond. Co.*, 756 F.2d 742 (9th Cir. 1985). The only facts that the Dowds have proven to show partiality are Wagner's termination at Ameritas, his age discrimination complaint against that company, and his nondisclosure of these matters after learning that Burmeister would serve as an expert witness. These few facts do not indicate that the district court was clearly wrong in finding that Wagner was not "evidently partial."

This case does not present the factors that typically indicate partiality. The Dowds have not shown that Wagner had any pecuniary interest in the arbitration—neither Wagner nor Ameritas would be financially affected by an award either way. In addition, no familial relationship was shown. Finally, Wagner's age discrimination complaint was not an adversarial relationship with one of the parties. Rather, it was with the employer of an expert witness. The expert witness, Burmeister, stated that he was not involved in Wagner's termination and that his relationship with Wagner had continued to be "cordial." The Dowds simply did not meet their burden of showing that Wagner's relationship with Burmeister's employer seriously casts doubt on his impartiality toward FOS or the Dowds.

The one factor that the Dowds do show is that Wagner did not disclose his complaint against Ameritas. While nondisclosure may heighten an inference of partiality, the burden remains with the Dowds to show that inference in the first instance. They have not.

The "Appointment and Oath" signed by Wagner required only disclosure of a relationship with the parties or their counsel; it did not apply to a complaint against the employer of an expert witness. The district court also found that under rule 19 of the Securities Arbitration Rules, Wagner had no duty to disclose his complaint against Burmeister's employer because Burmeister was not a party or a party's representative. Rule 19 requires disclosure of "*any* circumstance likely to affect impartiality, *including* any bias . . . or any past or present relationship with the parties or their representatives." (Emphasis supplied.) While the district court may have read rule 19 too narrowly, its ultimate ruling was correct.

Wagner's nondisclosure may not have comported with rule 19, but that is not the rule the Dowds ask us to invoke. They seek application of § 10(b) of the FAA, which provides a different test. As the court in *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673 (7th Cir. 1983), noted, a petitioner seeking to vacate an award under § 10(b) must come within the terms of that statute, namely, he must show *evident* partiality by an arbitrator.

When reviewing a judgment from a bench trial in a law action, an appellate court does not reweigh the evidence, but considers it in the light most favorable to the successful party, resolving evidentiary conflicts in favor of that party. See *Nebraska Builders Prod. Co. v. Industrial Erectors*, 239 Neb. 744, 478 N.W.2d 257 (1992). The district court found that "if there was any interest whatsoever [on the part of Wagner], *which the Court does not so find*, such interest or bias was de minimis." (Emphasis supplied.) The controlling language in the court's finding is that Wagner had no disqualifying interest. Despite making factual findings in the alternative, the district court was not clearly wrong in denying the motion to vacate the award.

The Dowds have not proven sufficient facts that a reasonable person would be required to find that Wagner was partial to FOS or biased against the Dowds. See *Morelite Const. v. N.Y.C. Dist. Council Carpenters*, 748 F.2d 79 (2d Cir. 1984). Partiality poses a problem when an arbitrator has a relationship with a party to the arbitration that would sway his judgment. Wagner simply had no relationship with the Dowds. His relationship with Ameritas was attenuated. There is simply no partiality "evident" from the record. The district court was not clearly wrong in denying the Dowds' motion to vacate the arbitration panel's award.

The district court correctly granted FOS' motion to stay pending arbitration and correctly denied the postarbitration motion to dissolve the stay. Likewise, the court was not clearly wrong in finding that there was not "evident partiality" such that the award should be vacated. We therefore affirm the judgment of the district court.

AFFIRMED.

WHITE, J., not participating.