Rel: November 8, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

————————————————

### SC-2024-0060

————————————————

### CNU of Alabama, LLC

### v.

### Shakeena Cox

————————————————

### SC-2024-0061

————————————————

### UHG I LLC

### v.

### Shakeena Cox

**Appeals from Mobile Circuit Court**
**(CV-23-22)**

MITCHELL, Justice.

CNU of Alabama, LLC, offers consumer loans to Alabama customers. In 2017, CNU and Shakeena Cox entered into an agreement that permitted Cox to take cash advances. Cox elected to take three advances totaling $1,250, but she later defaulted. CNU then assigned its rights under the agreement to UHG I LLC, which initiated a small-claims action against Cox in the Mobile District Court. There, Cox argued that the entire agreement, including an arbitration provision, was void under the Alabama Small Loan Act, § 5-18-1 et seq., Ala. Code 1975. The district court agreed and entered judgment for Cox.

UHG appealed to the Mobile Circuit Court. Cox then filed a counterclaim on behalf of herself and a class of Alabama citizens, adding CNU as a party and seeking injunctive relief and damages arising from CNU's agreements and UHG's collection efforts. In response, both companies sought to enforce the arbitration provision in the agreement. The circuit court denied their motions to compel arbitration, holding that: (1) the agreement and the arbitration provision were void under the Small Loan Act, (2) the arbitration provision was unconscionable, and (3)

2

UHG had waived its right to arbitrate after appealing the adverse judgment from the district court. UHG and CNU separately appealed.

We reverse the circuit court's decision denying UHG's and CNU's motions to compel arbitration as to Cox's counterclaim and remand for further proceedings. But we affirm the circuit court's decision denying UHG's motion to compel arbitration as to its initial collection claim.

<u>Facts and Procedural History</u>

In 2017, CNU created an "open-end line of credit" for Cox with a $2,000 credit limit. The agreement permitted Cox to "take cash advances" from "time to time." At issue in this case is the arbitration provision, which is discussed below.

The arbitration provision encompasses nearly every possible future dispute. It covers all "claim[s]" and is given the "broadest possible meaning." This includes "all federal or state law claims" as well as "all initial claims, counterclaims, cross-claims and third-party claims." It also covers "all claims based upon a violation of any local, state or federal constitution, statute, ordinance or regulation." But the arbitration provision does not cover "<u>any individual action brought by you in small claims court</u> or your state's equivalent court, unless such action is

transferred, removed, or appealed to a different court ...." (Emphasis added.)

The provision includes a delegation clause, which provides that "any dispute or controversy about the validity, enforceability, coverage or scope of this <u>Arbitration Provision</u> ... [is] for a court and not an arbitrator to decide." (Emphasis added.) But the clause also states that any dispute concerning "the validity or enforceability of the <u>Agreement as a whole is for the arbitrator, not a court, to decide</u>." (Emphasis added.) Finally, the "Class Action Waiver" provides that if either party chooses to arbitrate a claim, "neither [party] will have the right ... to participate in a class action."

After executing the agreement, Cox requested and received three separate advances ($500, $350, and $400), totaling $1,250. Although Cox paid just under $500 in interest and fees to CNU, she later failed to make additional payments. CNU then sold the account to UHG, and UHG filed a small-claims collection action against Cox in the Mobile District Court for the balance, plus interest. After a bench trial, the district court held that the agreement was subject to the Alabama Small Loan Act's

4

licensing requirement and was unenforceable because CNU, the original lender, was not properly licensed under the Act.

UHG timely appealed to the Mobile Circuit Court. Cox then amended her answer and added a counterclaim, naming UHG and CNU as counterclaim defendants. Marshaling the district court's holding, Cox sought to sue "for herself and on behalf of a class of similarly situated Alabama Citizens." She requested injunctive relief and damages resulting from (1) UHG's collection efforts and (2) the original loans that CNU had made while it lacked the required license.

In response, CNU filed a motion to compel arbitration and enforce the class-action waiver, which UHG joined. The circuit court denied the motion, holding that the Small Loan Act voided the agreement and its arbitration provision. The circuit court also held that the arbitration provision was unconscionable and that, alternatively, UHG had waived its right to compel arbitration when it pursued its collection action at the district-court level and continued to "seek judicial enforcement of its claims" by appealing. UHG and CNU appealed to this Court; we consolidated the appeals.

## Standard of Review

We review de novo the denial of a motion to compel arbitration. Ball Healthcare Servs., Inc. v. Flennory, 371 So. 3d 239, 242 (Ala. 2022). The parties seeking to compel arbitration (here, UHG and CNU) have the burden of proving the existence of an arbitration provision in a contract affecting commerce. Id. If those parties successfully prove such a contract, the burden shifts to the nonmovant (here, Cox) to show that the arbitration provision is invalid. Id.

## Analysis

Cox challenges the validity of the agreement and the arbitration provision on two grounds: voidness and unconscionability. In the alternative, Cox argues that UHG waived its arbitration right by pursuing its initial collection action in the district court and appealing after an adverse ruling. As discussed below, we hold that (1) the arbitration provision is valid and requires Cox to arbitrate her counterclaim and (2) the class-action waiver prevents Cox from representing a class. We agree, however, that UHG waived its right to require Cox to arbitrate its initial collection claim. We address these points in turn.

6

A.  Challenges to the Arbitration Provision

Before considering a challenge to an arbitration provision, we look to ordinary state-law contract principles to determine whether the parties agreed to arbitrate in the first place.  Oakwood Mobile Homes, Inc. v. Barger, 773 So. 2d 454, 459 (Ala. 2000).  The party seeking arbitration under the Federal Arbitration Act ("the FAA"), 9 U.S.C. § 1 et seq., must prove the existence of a contract to arbitrate that implicates interstate commerce.  Flennory, 371 So. 3d at 242.  If the party seeking arbitration satisfies this burden, then the burden shifts to the party challenging enforcement.  Id.  Here, the existence of an agreement affecting interstate commerce is undisputed; thus, the burden of proof moved to Cox to challenge its enforcement.

The FAA governs our analysis of challenges to arbitration provisions in contracts affecting interstate commerce.  Under the FAA, arbitration provisions may be invalidated on such "grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  And arbitration provisions are considered severable as a matter of federal law. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 400-03 (1967).

The United States Supreme Court divides challenges to the validity of arbitration provisions into two types. <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 U.S. 440, 444 (2006). The first attacks the validity of arbitration provisions specifically and is resolved by courts. <u>Id.</u> The second attacks the validity of contracts "as a whole" but is resolved by arbitrators. <u>Id.</u> Challenges to the contract as a whole are either "on a ground that directly affects the entire agreement … or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." <u>Id.</u>

The arbitration provision here reflects <u>Buckeye</u>'s dichotomy: "<u>any dispute</u> or controversy <u>about the validity, enforceability</u>, coverage or scope <u>of this Arbitration Provision</u> … [is] for a court and not an arbitrator to decide</u>." (Emphasis added.) In contrast, the sentence that immediately follows states: "any dispute or controversy that concerns the validity or enforceability of the Agreement <u>as a whole</u> is for the <u>arbitrator, not a court, to decide</u>." (Emphasis added.) Thus, whether a court or an arbitrator decides the arbitration provision's validity depends on the type of challenge asserted.

Here, Cox's voidness and unconscionability challenges attack the agreement as a whole and therefore are for an arbitrator to decide in the first instance. We examine both challenges.

### 1. Voidness and the Small Loan Act Challenge

Cox contends in her counterclaim that the arbitration provision is unenforceable because it is "part of an agreement that is void in its entirety, ab initio, by operation of the [Small Loan Act] and because the subject of the agreement (an unlicensed small loan) constitutes a crime." This is clearly a challenge to the agreement as a whole. Thus, the initial resolution of this issue is for an arbitrator to make, as called for in the arbitration provision. Although the parties and an amicus spend substantial portions of their briefs arguing whether the agreement here is governed by either the Small Loan Act or the Alabama Consumer Credit Act (commonly known as the "Mini-Code"), § 5-19-1 et seq., Ala. Code 1975, we do not address the merits of their arguments because this issue is for an arbitrator to decide in the first instance.

Yet the circuit court addressed the merits, largely by failing to treat the arbitration provision as severable. In doing so, the court concluded that the agreement is governed by the Small Loan Act because the Act

9

covers lending agreements when the amount advanced to the borrower is less than $1,500. Therefore, the court held that because Cox had been advanced only $1,250 total, and because CNU is not licensed under the Act, the entire agreement, including the arbitration provision, is void.

This is the same reasoning that the United States Supreme Court rejected in <u>Buckeye</u>. <u>See</u> 546 U.S. at 444. There, the plaintiff had argued "that the contract as a whole (including its arbitration provision) is rendered invalid by the usurious finance charge." <u>Id.</u> The Court held that this was a challenge to the contract as a whole. <u>Id.</u>; <u>see</u> <u>Bess v. Check Express</u>, 294 F.3d 1298, 1305 (11th Cir. 2002) (holding that a challenge to an arbitration provision under the Small Loan Act was to the contract as a whole because the respondents challenged the "<u>content</u>" and not the "<u>existence</u>" of the contract).

But Cox cites <u>Coinbase, Inc. v. Suski</u>, 602 U.S. 143 (2024), to argue that, even though her voidness challenge under the Small Loan Act applies to the whole agreement, it can still be specific to the arbitration provision. That is a fair reading of <u>Coinbase</u>: a voidness challenge can in some circumstances apply equally to both the whole contract and an arbitration provision. But Cox's challenge does not. First, the Small

Loan Act applies to contracts "of loan," which the arbitration provision in isolation is not. § 5-18-4(d), Ala. Code 1975. Second, the section of the Small Loan Act governing enforceability provides that "any provision of a loan contract which violates [this Act] shall be <u>unenforceable by the licensee to the extent, but only to the extent, of the violation</u>, and <u>the other remaining provisions</u> and agreements <u>shall be enforceable</u> …." § 5-18-21, Ala. Code 1975 (emphasis added). Thus, the Small Loan Act voids only the illegal parts of a contract and specifically exempts any remaining "provisions," such as an arbitration provision. See <u>id.</u>

The circuit court attempted to distinguish <u>Buckeye</u> by citing § 5-18-4(d) and <u>Alabama Catalog Sales v. Harris</u>, 794 So. 2d 312, 315 (Ala. 2000), for the proposition that "no part of an unlicensed small loan agreement, including any arbitration clause, may be enforced." This reasoning is incorrect for two reasons. First, the United States Supreme Court's decision in <u>Buckeye</u> abrogated <u>Harris</u> because our precedent did not treat arbitration provisions as severable. <u>Compare Harris</u>, 794 So. 2d at 314 n.2 (rejecting the premise that <u>Prima Paint</u> requires arbitration of any claim unless a party specifically challenged an arbitration clause), <u>with Buckeye</u>, 546 U.S. at 445-46 (holding that "unless the challenge is

11

to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator"). Second, as mentioned above, the Small Loan Act voids loan contracts "only to the extent" of the "violation." § 5-18-21. Because the arbitration provision is severable from the agreement, it is not covered by the Small Loan Act.

Relatedly, the circuit court's reliance on Macon County Greyhound Park, Inc. v. Hoffman, 226 So. 3d 152 (Ala. 2016), is misplaced. Our Court recognized in Hoffman that, in some cases, an arbitration provision itself may be voided on the ground of illegality. Id. But in Hoffman, our Court voided the arbitration provision because it included illegal consideration by requiring arbitration "'[a]s a condition of participating in any bingo game.'" Id. at 155 (emphasis added). At that time, our Court had clearly established that electronic-bingo games are a form of illegal gambling in Alabama. Id. at 167. Thus, the arbitration provision there was void because it was "based on illegal gambling consideration" by its very terms. Id. So, this Court held that, "even if the arbitration provision [was] severed from the rest of [the contract], the arbitration provision itself [was] void as a matter of law." Id.

12

Here, the arbitration provision concerns "an inherently legal activity -- … <u>a contract to lend money</u>." <u>Id.</u> at 168 (emphasis added). It does not involve "patently illegal conduct" like operating electronic-bingo games. <u>Id.</u> And even if an arbitrator later determines that the Small Loan Act voids the agreement here, that is unlike an illegal-gambling contract, which would be impossible for any decision-making body to determine is legal. Thus, the circuit court erred in considering the merits of Cox's argument that the agreement was void for illegality. This was for an arbitrator to determine.

### 2. Unconscionability

We now turn to Cox's unconscionability argument. Unconscionability is a defense that may invalidate an arbitration provision. <u>Rent-A-Ctr., W., Inc. v. Jackson</u>, 561 U.S. 63, 68 (2010). As stated earlier, courts decide whether an arbitration clause is unconscionable when the challenge is "'addressed to the arbitration clause itself.'" <u>American Gen. Fin., Inc. v. Branch</u>, 793 So. 2d 738, 748 (Ala. 2000) (citation omitted). Cox says that her unconscionability challenge is specific to the arbitration provision, but that is mistaken: her unconscionability challenge depends on the argument that the

agreement as a whole is unconscionable. To consider her argument, we would need to decide, on the merits, whether the agreement as a whole is void. And that is for an arbitrator -- not a court -- to determine.

In Alabama, a contract is unconscionable when (1) its terms are "'grossly favorable to a party'" that has (2) "'overwhelming bargaining power.'" SCI Alabama Funeral Servs., LLC v. Hinton, 260 So. 3d 34, 39 (Ala. 2018) (citation omitted). The first prong represents substantive unconscionability and the second represents procedural unconscionability. Id. at 39. The challenger must satisfy both prongs to establish unconscionability. Blue Cross Blue Shield of Alabama v. Rigas, 923 So. 2d 1077, 1087 (Ala. 2005).

Our precedent recognizes that it is "unconscionable" to enforce an arbitration provision when it is itself based on illegal consideration. Hoffman, 226 So. 3d at 169. Here, Cox argues, and the circuit court held, that the arbitration provision is substantively unconscionable because it is part of an illegal loan agreement. But that argument fails for the same reason stated earlier: the arbitration provision here contains no illegal consideration. Cf. Hoffman, 226 So. 3d at 155. Because Cox fails to demonstrate that her substantive-unconscionability challenge is specific

14

to the arbitration provision, we need not consider her procedural-unconscionability challenge. See Hinton, 260 So. 3d at 41.

For these reasons, UHG and CNU have shown that the arbitration provision is valid. Cox must therefore arbitrate her counterclaim against them.

### B. Waiver

While Cox does not argue that CNU waived its arbitration right, she argues that UHG did so. In its order, the circuit court held that, even if the arbitration provision applied, UHG had waived its right to invoke arbitration by pursuing its initial collection claim in the district court and later appealing to the circuit court. On appeal, UHG argues that it did not substantially invoke the litigation process because the arbitration provision contains a small-claims-court exception and because the provision applies on a claim-by-claim basis. As discussed below, we hold that UHG waived arbitration as to its initial collection claim, but not as to Cox's counterclaim.

#### 1. Framework for Determining Waiver of a Right to Arbitrate

As an initial matter, a recent case from the United States Supreme Court, Morgan v. Sundance, Inc., 596 U.S. 411, 414 (2022), requires us to

15

modify our longstanding test for determining whether there has been waiver of an arbitration claim.

Under our precedent, we have asked two questions to determine whether a party has waived its right to enforce arbitration: "'"[(1)] whether the party's actions <u>as a whole</u> have substantially invoked the litigation process and [(2)] whether the party opposing arbitration would be prejudiced if forced to submit its claims to arbitration subsequent to the other party's actions invoking the litigation process."'" <u>Key v. Warren Averett, LLC</u>, 372 So. 3d 1132, 1137 (Ala. 2022) (citations omitted).

But the prejudice requirement is no longer good law. In <u>Morgan</u>, the Supreme Court held that the FAA's "'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." 596 U.S. at 418. And one of the rules adopted by the federal courts was the prejudice requirement, which the Court in <u>Morgan</u> held is not authorized by FAA's text. <u>Id.</u> at 419.

While <u>Morgan</u> allows for "ordinary procedural rule[s]" to remain in operation, including rules addressing "waiver," our precedents for determining waiver of arbitration rights under the FAA are explicitly

16

grounded in federal law, not Alabama contract law.  Id. at 418;  see, e.g.,

Ex parte Costa & Head (Atrium), Ltd., 486 So. 2d 1272, 1276-77 (Ala.

1986), overruled on other grounds by Ex parte Jones, 628 So.2d 316 (Ala.

1993) ("[T]he federal courts have held that it is not necessarily the

inconsistency of a party's actions that decides the issue of waiver, but,

rather, the presence or absence of prejudice to the other party resulting

from those actions.").[1]

Morgan thus requires that we no longer consider prejudice in our

waiver analysis for arbitration provisions governed by the FAA.  596 U.S.

at 418; see Kingery Constr. Co. v. 6135 O St. Car Wash, LLC, 312 Neb.

502, 514, 979 N.W.2d 762, 770 (2022) (holding that Morgan requires

Nebraska courts to discard their arbitration-specific prejudice

requirement because it is based on now erroneous federal caselaw

---

[1]We are aware of no Alabama caselaw -- outside of the arbitration context -- in which a showing of prejudice is required to establish waiver of a contractual right.  Indeed, in analogous cases involving forum-selection clauses, this Court has not required a showing of prejudice; instead, we have asked only whether the party substantially invoked the litigation process.  See, e.g., Ex parte Spencer, 111 So. 3d 713, 718 (Ala. 2012) ("[A] party may waive its right to enforce a forum-selection clause, as it may with other contract provisions, by evincing an intention to do so.").

interpreting the FAA); see also Quach v. California Com. Club, Inc., 16 Cal. 5th 562, 569, 551 P.3d 1123, 1127, 323 Cal. Rptr. 3d 126, 130 (2024) (finding the same for California courts).

Relatedly, we must also reframe the burden of proof for a party seeking to prove waiver of an arbitration provision. We have recently stated that "'Alabama law also makes it clear that, because there is such a strong federal policy favoring arbitration, "'a waiver of the right to compel arbitration will not be lightly inferred, and, therefore, [the party] seeking to prove waiver has a heavy burden.'"'" Key, 372 So. 3d at 1138 (citations omitted; emphasis added). But, as Morgan makes clear, "federal policy is about treating arbitration contracts like all others, not about fostering arbitration." 596 U.S. at 418. Thus, we will no longer require a greater burden for a party seeking to prove waiver in the arbitration context than we would for a party asserting any other kind of waiver of a contractual right.

Going forward, our standard for considering waiver in the arbitration context now asks, "'"whether the party's actions as a whole have substantially invoked the litigation process."'" Key, 372 So. 3d at 1137 (citations omitted). We will no longer require a party arguing

waiver of an arbitration provision to meet a "heavy" burden, just an ordinary one. With that framework in mind, we now consider UHG's initial collection claim in the district court and Cox's counterclaim in the circuit court.

### 2. The Initial Collection Claim by UHG in the District Court

As stated earlier, the arbitration provision here is nearly all-encompassing. It does not apply, however, to "any individual action brought by <u>you</u> in small claims court or your state's equivalent court, unless such action is transferred, removed, or appealed to a different court ...." (Emphasis added.) UHG argues that this carve-out provision applies to its initial collection claim in the district court and that it thus could not have waived its arbitration right. We disagree. By its plain text, the carve-out applies only to Cox (referred to as "you" in the arbitration provision). The language following "unless" confirms our reading: it refers to "such action," rather than "any action," which is "any individual action brought by [Cox]." Thus, this provision provides a carve-out only to Cox, giving her the ability to file in small-claims court rather than in arbitration, but providing the option for UHG to seek arbitration on transfer, removal, or appeal of Cox's suit.

UHG initiated these proceedings by filing suit in the district court. After losing on the merits, it chose to appeal to the circuit court. UHG's pursuit of its initial collection claim in court and its subsequent appeal shows a substantial invocation of the litigation process. It therefore waived its right to seek arbitration. Key, 372 So. 3d at 1137; see also Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So. 2d 897, 899 (Ala. 1995) (holding that a party waived its right to arbitrate a claim after removing the case to federal court and invoking arbitration only after an adverse ruling in federal court).

### 3. Cox's Counterclaim

UHG next argues that Cox's counterclaim in the circuit court is subject to arbitration. We agree.

The arbitration provision applies to "all federal or state law claims," which includes "all initial claims, counterclaims, cross-claims and third-party claims." Cox filed a counterclaim on behalf of herself and a putative class seeking injunctive relief and damages resulting from CNU's loans and UHG's collection efforts.

Cox argues that UHG waived its right to arbitrate her counterclaim by filing its initial collection claim. But this argument fails to account

20

for the fact that the provision works on a claim-by-claim basis. For instance, the provision defines an arbitrable "claim" to include "counterclaims." This definition explicitly contemplates an initial action filed by UHG that is then met by a counterclaim from Cox -- precisely what occurred here.

The "Class Action Waiver" provision, which applies here, confirms our reading of the arbitration provision. It provides that if either party arbitrates a claim "<u>neither [party] will have the right ... to participate in a class action</u> ...." (Emphasis added.) From its plain text, the class-action waiver applies because UHG and CNU sought to arbitrate "a" claim -- Cox's counterclaim -- and that removes Cox's right to participate in a class action. Thus, the class-action waiver precludes Cox from representing a class in her counterclaim before an arbitrator.

This conclusion is bolstered by the fact that neither party would have been able to raise any class-action claim in the district court because that court lacks jurisdiction to hear such claims. Ala. R. Civ. P. 23(dc) ("District Court Rule. Rule 23 does not apply in the district courts."). It would be a stretch to argue that filing a small-claims action for about $2,100 opens the door to a class action challenging all similar loans made

21

during the past four years. And even if this was a close call, federal courts have recognized that a party may rescind its waiver of the right to compel arbitration when the case fundamentally changes, such as when an amended complaint expands a potential class from hundreds to thousands of participants. See Krinsk v. SunTrust Banks, Inc., 654 F.3d 1194, 1204 (11th Cir. 2011); see also Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 391 (7th Cir. 1995). Here, Cox's counterclaim marked a substantial shift in the litigation. And the arbitration provision allowed UHG to require Cox to arbitrate her counterclaim even though UHG waived its right to seek arbitration of its initial collection claim.

For these reasons, Cox's counterclaim against UHG and CNU had to be arbitrated, and Cox cannot represent a class against either UHG or CNU because she waived that right in the arbitration provision. She must proceed on an individual basis on her counterclaim.

## Conclusion

UHG and CNU have established that the circuit court erred when it held that the arbitration provision was unenforceable. Whether the agreement between CNU and Cox was illegal or unconscionable is for an

arbitrator, not a court, to decide. The circuit court's denial of the CNU's motion to compel arbitration was therefore erroneous and is hereby reversed.

As for UHG, the circuit court held that it had waived its right to enforce the arbitration provision in any event because it had pursued its collection action in the courts. We agree with respect to the initial collection claim UHG filed against Cox. But UHG did not waive its right to arbitrate the counterclaim that Cox later asserted against it in the circuit court. Accordingly, the circuit court's denial of UHG's motion to compel arbitration is affirmed in part and reversed in part.

SC-2024-0060 -- REVERSED AND REMANDED.

Parker, C.J., and Shaw, Wise, Bryan, and Sellers, JJ., concur.

Mendheim, J., concurs in the result.

Stewart, J., concurs in the result, with opinion.

Cook, J. recuses himself.

SC-2024-0061 -- AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Parker, C.J., and Shaw, Wise, and Bryan, JJ., concur.

Sellers, J., concurs in part and concurs in the result, with opinion.

Mendheim, J., concurs in the result.

Stewart, J., concurs in the result, with opinion.

Cook, J. recuses himself.

SELLERS, Justice (concurring in part and concurring in the result in appeal no. SC-2024-0061).

I agree with the majority's analysis with respect to most of the issues and the majority's ultimate disposition of these appeals. I write separately to point out that, in my view, <u>Morgan v. Sundance, Inc.</u>, 596 U.S. 411, 417 (2022), is limited in scope and does not preclude Alabama courts from considering prejudice in determining whether a party has waived the right to arbitrate. <u>Morgan</u> merely held that federal courts cannot create procedural rules that are specific to arbitration, such as <u>requiring</u> a showing that a party's attempt to litigate has prejudiced the other party in order to prove waiver of the contractual right to arbitrate. It did not prohibit courts from <u>considering</u> the role of prejudice in waiver analysis.[2] Alabama courts have long considered whether a party's participation in the litigation process has prejudiced other parties in an

---

[2]Multiple other states use prejudice in a totality-of-the-circumstances analysis of whether a party has waived the right to arbitrate. <u>Wagner Constr. Co. v. Pacific Mech. Corp.</u>, 41 Cal. 4th 19, 31, 157 P.3d 1029, 1035, 58 Cal. Rptr. 3d 434, 442 (2007); <u>City & Cnty. of Denver v. District Ct. of Denver</u>, 939 P.2d 1353, 1369 (Colo. 1997); <u>Welty Bldg. Co. v. Indy Fedreau Co.</u>, 985 N.E.2d 792, 798 (Ind. Ct. App. 2013); <u>Cole v. Jersey City Med. Ctr.</u>, 215 N.J. 265, 280-83, 72 A.3d 224, 233-34 (2013); <u>Stark v. Molod Spitz DeSantis & Stark, P.C.</u>, 9 N.Y.3d 59, 66-67, 876 N.E.2d 903, 908, 845 N.Y.S.2d 217, 222; and <u>CropMark Direct, LLC v. Urbanczyk</u>, 377 S.W.3d 761, 763-64 (Tex. App. 2012).

arbitration-waiver analysis. See Hales v. ProEquities, Inc., 885 So. 2d 100, 105 (Ala. 2003) (quoting Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So. 2d 897, 899 (Ala. 1995)). I believe that those cases are still binding precedent and that Morgan does not require us to abandon this long-standing principle.

In the context of arbitration, prejudice is the unfairness resulting from delay, expense, or damage to a party's legal position when the opposing party changes course and attempts to arbitrate an issue after it has already engaged in litigation of the same issue. PPG Indus., Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 107 (2d Cir. 1997). Considering prejudice in a waiver analysis is appropriate because determining whether there has been a waiver of the right to arbitrate is "based on the particular facts of each case." Companion Life Ins., 670 So. 2d at 899. Before Morgan, most of the federal circuits required a party seeking to prove waiver to show that that he or she had been prejudiced by the opposing party's invocation of the litigation process.[3] Morgan, 596 U.S.

---

[3]But even the federal circuits that did not require prejudice still considered it in their waiver analysis. National Found. for Cancer Research v. A.G. Edwards & Sons, Inc., 821 F.2d 772, 777 (D.C. Cir. 1987); St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co., 969 F.2d 585, 590 (7th Cir. 1992).

at 416. The United States Supreme Court rejected that reasoning in Morgan and held that the Federal Arbitration Act ("the FAA"), 9 U.S.C. § 1 et seq., does not allow federal courts to create arbitration-specific variations of procedural rules. Id. at 417. Instead, the FAA treats arbitration agreements like all other contracts; federal courts cannot impose a prejudice requirement that applies to only arbitration agreements. Id. at 418.

But Morgan does not require state courts to abandon state law that calls for consideration of prejudice in determining whether someone has waived contractual rights. See, e.g., Desert Reg'l Med. Ctr., Inc. v. Miller, 87 Cal. App. 5th 295, 321-22, 303 Cal. Rptr. 3d 412, 432 (2022) (declining to apply Morgan in a case involving arbitration of claims asserting violations of state labor law because the plaintiff had sued under state law); F.T. James Constr., Inc. v. Hotel Sancho Panza, LLC, 657 S.W.3d 623, 635 (Tex. App. 2022) (refusing to apply Morgan on state-law grounds). Further, allowing Alabama courts to take prejudice into consideration is not at odds with Morgan or the FAA. See Marmo & Sons Gen. Contracting, LLC v. Biagi Farms, LLC, 478 N.J.Super. 593, 606-07, 317 A.3d 947, 955-56 (App. Div. 2024) (holding that New Jersey caselaw

27

that allowed courts to consider prejudice in the totality-of-the-circumstances waiver analysis did not conflict with <u>Morgan</u> because considering prejudice is not the same as requiring prejudice).

Because the FAA favors allowing parties to contract for arbitration, federal courts facing waiver issues have considered whether a party has been prejudiced by another party's invocation of the litigation process. The majority opinion notes that our precedent considering prejudice in the context of waiver is grounded in opinions from those federal courts. Thus, this Court obviously found that precedent persuasive and an appropriate factor in the totality-of-the-circumstances waiver analysis. I still find it persuasive and see no conflict with the Supreme Court's holding in <u>Morgan</u>.[4] An analysis of Morgan's implications with respect to Alabama law is unnecessary in this particular case, because the parties have hardly addressed it in their briefings. I would not be in favor of suggesting that we abandon long-standing precedent on the issue of waiver in the context of arbitration agreements without a full and

---

[4]Persuasiveness aside, this court is not required to change its precedent in light of <u>Morgan</u>. <u>Raymond James Fin. Servs., Inc. v. Honea</u>, 55 So. 3d 1161, 1170 (Ala. 2010).

complete briefing of this important issue. Accordingly, I disagree as to

the effect of <u>Morgan</u> on Alabama arbitration law.

STEWART, Justice (concurring in the result).

I agree with the main opinion that Shakeena Cox's voidness and unconscionability challenges attack the agreement between her and CNU of Alabama, LLC, as a whole and, therefore, are for an arbitrator to decide. Nevertheless, I disagree with the main opinion's analysis for three reasons.

First, I disagree that the saving provision in the Alabama Small Loan Act, § 5-18-21 et seq., Ala. Code 1975, applies to the arbitration provision in this case. While it is true that § 5-18-21 voids only the illegal parts of the contract and specifically exempts any remaining provisions, that savings clause applies only to "licensees." The Mobile Circuit Court found that CNU and UHG I, LLC, were not licensees; thus, § 5-18-21 does not apply. Instead, § 5-18-4(d), Ala. Code 1975, applies and provides that "[a]ny contract of loan in the making or collection of which any act shall have been done which violates this section shall be void, and the lender shall have no right to collect, receive or retain any principal, interest, or charges whatsoever." If the arbitration provision is part of the void contract, it is also void. To hold to the contrary would be to effectively overrule <u>Macon County Greyhound Park, Inc. v. Hoffman</u>, 226 So. 3d 152

30

(Ala. 2016), and require parties to arbitrate illegal contracts. Because Cox challenged the delegation clause in the agreement, the foundational issue whether the entire agreement, including the arbitration clause, is illegal is one for the arbitrator to decide. The law is not that the arbitration clause is unassailable -- only that it must be directly challenged. Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 71 (2010).

Second, I disagree with the main opinion's analysis to the extent that it concludes that the class-action waiver would survive a determination by the arbitrator that the agreement is void. Although the class-action waiver appears in the arbitration clause, it seemingly applies to both arbitration and court actions. Regardless, it is not an arbitration clause and should not be severed. If the matter is being arbitrated, the entire matter should be subject to arbitration. Moreover, the circuit court did not rule on the validity of the class-action waiver and thus this Court should not reach that issue.

Third, I have concerns about the main opinion's treatment of Cox's counterclaim against UHG. Under Rule 13(a), Ala. R. Civ. P., the counterclaim was compulsory, and, thus, when UHG filed its complaint in the Mobile District Court, Cox had to assert her counterclaim. This

31

Court has not directly addressed waiver when the party insisting on arbitration initiated the lawsuit for which the defendant has a compulsory counterclaim that would be subject to a res judicata defense.

Because Cox challenged the agreement as a whole, an arbitrator should decide whether the entire agreement is illegal, which, if it is, would render the arbitration clause void and the class-action waiver inoperable. Therefore, I concur only in the result.